THE STATE OF OHIO, APPELLANT, *v.* SHEARDON, APPELLEE.

(No. 71-696—Decided July 5, 1972.)

22

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. Curtis L. Smith*, for appellant.
*Mr. Edward J. Maher*, for appellee.

BROWN, J.   We reverse the Court of Appeals.

The issue before this court is whether the pre-indictment identification procedure employed by the police in the absence of counsel requires that the victims' in-court identification of defendant be excluded from the evidence.

In *Kirby* v. *Illinois* (decided June 7, 1972),      U. S.     , the Supreme Court refused to extend the *per se* exclusionary rule established in *United States* v. *Wade* (1967), 388 U. S. 218, and *Gilbert* v. *California* (1967), 388 U. S. 263 (as to identification testimony based upon post-indictment lineups conducted without notice to, and in the absence of, counsel), to a police station showup that took place before the defendant had been indicted or otherwise formally charged relative to the crime in question.

As stated by Justice Stewart:

"* * * a person's Sixth and Fourteenth Amendment

right to counsel *attaches only at or after the time that adversary judicial proceedings have been initiated against him.* See *Powell* v. *Alabama,* 277 U. S. 45; *Johnson* v. *Zerbst,* 304 U. S. 458; *Hamilton* v. *Alabama,* 368 U. S. 52; *Gideon* v. *Wainwright,* 372 U. S. 335; *White* v. *Maryland,* 373 U. S. 59; *Massiah* v. *United States,* 377 U. S. 201; *United States* v. *Wade,* 388 U. S. 218; *Gilbert* v. *California,* 388 U. S. 263; *Coleman* v. *Alabama,* 399 U. S. 1.

"This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The *Powell* case makes clear that the right attaches at the time of arraignment, and the court has recently held that it exists also at the time of a preliminary hearing. *Coleman* v. *Alabama, supra.* But the point is that, while members of the court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all of those cases have involved points of time at or after the initiation of adversary judicial proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.*"

However, the court continued:

"What has been said is not to suggest that there may not be occasions during the course of a criminal investigation when the police do abuse identification procedures. Such abuses are not beyond the reach of the Constitution. As the court pointed out in *Wade* itself, it is always necessary to 'scrutinize *any* pretrial confrontation . . .' 388 U. S., at 227. The due process clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall* v. *Denno,* 388 U. S. 293; *Foster* v. *California,* 394 U. S. 440. When a person has not been formally charged with a criminal offense, *Stovall strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime.*" (Emphasis supplied.)

We therefore turn to a determination of whether the confrontation was unnecessarily suggestive and con-

ducive to irreparable mistaken identification as to constitute a denial of due process of law. *State* v. *Hurt* (1972), 30 Ohio St. 2d 86; *Stovall* v. *Denno, supra* (388 U. S. 293, 302); *Simmons* v. *United States* (1968), 390 U. S. 377.

In the instant case, both victims had independently selected defendant's picture after looking at numerous police identification pictures. The fact that Lennon commented to Miss McCloy that on the day before he had "seen a slide that was the man" cannot reasonably be construed as having biased Miss McCloy, since the record does not indicate that Lennon attempted in any way to describe the picture he selected to her.

Both victims were unequivocal in their selection of the defendant's identification slide, and Lennon's request to see the suspect in person was due only to the dark tone of the projection he had selected.

Thus, at the time of the confrontation, each had already individually selected the defendant, and sought the live one-to-one confrontation solely to verify one physical characteristic, the color of the suspect's skin.

While we cannot condone the use of a pre-trial confrontation to firm up the uncertain memories of witnesses where a normal jail lineup could be arranged, to have required a lineup in the instant case with numerous "suspects" would not have aided in avoiding a mistaken identification, since the witnesses had already positively identified the defendant and merely wanted to confirm a feature of this *particular* man.

Further, an examination of the record regarding the in-court identification of defendant clearly reveals that the in-court identification was not tainted by the pre-trial confrontation. The totality of the circumstances surrounding the pre-trial identification, including the victims' prior opportunity to observe the alleged criminal act and their extensive—and accurate—description of the shorter assailant indicates that they had adequate opportunity to make independant observations at the time of the crime.

The testimony indicated that the victims were initially accosted in a well-lighted area, and that for several min-

utes each victim had an opportunity to look at the shorter robber in the face, notice his height, weight, approximate age, and dress to the extent that they even recollected the color and finish of his shoes.

Although the confrontation procedure employed by the police, wherein the defendant, alone and dressed in prison garb, was shown to the victims in the county jail, would have been "excessively suggestive and conducive to irreparable mistaken identification" at an earlier stage of the identification procedure, such is not the case after the witnesses have positively identified the suspect and merely seek confirmation of a tonal characteristic that was not adequately revealed in the police identification picture.

In the instant case, both witnesses had ample prior opportunity to observe the assailant during the criminal act: no discrepancy was shown to exist between their pre-lineup descriptions of defendant (which was complete and detailed); no identification of any other person was made prior to the lineup; there was never any failure to identify the defendant on a prior occasion; and there was only a minimal lapse of time between the crime and the confrontation.

After considering these factors and the totality of the circumstances surrounding the pre-trial identification, we find that the identification procedure followed was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.