THE STATE OF OHIO, APPELLEE, *v.* STRICKLEN, APPELLANT.

[Cite as State v. Stricklen (1980), 63 Ohio St. 2d 47.]

(No. 79-1492—Decided July 2, 1980.)

*Mr. William R. Swigart,* prosecuting attorney, for appellee.

*Messrs. Storrs & Marlatt* and *Mr. James I. Marlatt,* for appellant.

*Per Curiam.* Appellant contends that the courts below incorrectly interpreted the law as enunciated in *Kirby* v. *Illinois* (1972), 406 U.S. 682, and *State* v. *Sheardon* (1972), 31 Ohio St. 2d 20, thus applying an erroneous standard in assessing whether Stricklen's constitutional rights were violated during certain pre-trial occurrences. In its briefest form, appellant's argument suggests that his right to counsel begins at the commencement of what he terms "the criminal adversary proceedings"; in this cause that phrase is taken to mean a period prior in time to indictment or judicial action.

Putting aside for the moment the possible merits of appellant's argument, we discuss briefly the circumstances of the crime and Stricklen's arrest as those matters are reflected in the transcript of the hearing on appellant's pre-trial motions to suppress.

Mary Lou Reckner called local police authorities on August 28, 1978, to report that she had been violently assaulted and raped. Within minutes of her call, a Fulton County Deputy Sheriff was dispatched to the Reckner home,

there receiving from the victim a detailed description of her assailant and of the vehicle in which she had observed him.

The description obtained was broadcast to all police units in the area. A member of the police department in the nearby village of Delta observed and stopped the vehicle driven by Stricklen who was thereafter removed from the car and taken to the Fulton County jail. A .45 caliber automatic (alleged to have been stolen from the Reckner home) and a knife (alleged to have been the weapon used to intimidate Mrs. Reckner immediately prior to the sexual assaults committed against her) were found inside the car.

At the place of his apprehension, Stricklen was advised of his *Miranda* rights. At the county jail he was advised that he was being held for questioning and potential charges. There seems to be no question that he was the obvious focus of police investigation at that moment, though no formal charges had as yet been filed. Stricklen was again informed of his *Miranda* rights and responded that he desired to call his wife, who would then contact counsel. His wife was at work, however, and Stricklen postponed any phone call to her until she returned home. Facilities were available to him to make a direct contact with counsel of his choice at all times during the period under consideration.

Appellant was fingerprinted, issued jail clothing in place of his own, and hair samples were taken from him with his approval and assistance. After having been booked, Stricklen was taken to the deputy's room and for the third time advised of his constitutional rights, including his right to counsel. Reiterating that the only phone call he presently desired was one to his wife and that he would contact her later, he signed a general *Miranda* waiver and was placed in a cell.

Several hours later, he was removed to another area of the jail for the purpose of a line-up proceeding. There he was viewed and identified by Mrs. Reckner. The record before us indicates that counsel was appointed for defendant at his request but that both the formal request and the act of appointment occurred after the identification line-up procedure. One segment of the testimony indicates that at some time appellant made mention of the fact that he had no funds and desired the appointment of counsel. It is not entirely clear when this re-

quest was made; there is no indication that he demanded counsel at any time prior to the line-up or that such demand, if made, was rebuffed. The record does suggest appellant's desire to consult counsel before giving any statement.

Considering the state and content of the record before this court, it is difficult to agree with appellant's primary contention that he was deprived of the right to counsel accorded to him by constitutional mandate.

Even so, we must consider a second aspect of the issue raised. While we find no expression in the record that Stricklen was *denied* the right to counsel, we next must inquire whether his constitutional rights were violated when, under the circumstances aforementioned, the line-up proceedings took place without the presence of counsel.

We do not. understand the rule of law as enunciated in *Kirby* v. *Illinois, supra* (406 U.S. 682), or in *State* v. *Sheardon, supra* (31 Ohio St. 2d 20), to restrict a defendant's right to counsel to post-indictment confrontations alone. More correctly, such rights accrue to a defendant after such time as he has been indicted or otherwise formally charged relative to the crime in question. *United States* v. *Wade* (1967), 388 U.S. 218; *Gilbert* v. *California* (1967), 388 U.S. 263; *Moore* v. *Illinois* (1977), 434 U.S. 220. We cannot say that in the instant cause, Stricklen had been formally charged with the crimes in question, much less indicted for any of them. We do not view the arrest and detention of appellant to be synonymous with the formality of charge addressed in the opinions cited above. This view would appear to be in accord with that expressed in portions of the *Kirby* opinion, as follows:

"In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell* v. *Alabama,* 287 U.S. 45, it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." (*Id.,* at page 688.)

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have

solidified.***It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." (*Id.*, at pages 689-690.)

The opinion continues, at pages 690-691, as follows:

"What has been said is not to suggest that there may not be occasions during the course of a criminal investigation when the police do abuse identification procedures. Such abuses are not beyond the reach of the Constitution. As the Court pointed out in *Wade* itself, it is always necessary to 'scrutinize any pretrial confrontation.***' 388 U.S., at 227. The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification.***When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime."

When, as here, one is advised and thus presumed to be aware of his right to counsel and does not exercise that known right, but instead submits to a line-up confrontation proceeding occurring prior to indictment and prior to formal charges having been lodged against him, he cannot be said to have been deprived of his constitutional right to counsel.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, BELL, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

BELL, J., of the Ninth Appellate District, sitting for W. BROWN, J.