THE STATE OF OHIO, APPELLEE, *v.* McGHEE, APPELLANT.

(Nos. 51825 and 51826 — Decided April 7, 1987.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Diane Wynshaw-Boris,* for appellant.

ANN McMANAMON, J. During the summer of 1984, the city of Cleveland fell victim to the theft of approximately $45,000 from project CLEAN, a summer youth employment program. Following a lengthy investigation, Darryl Williams, a CLEAN employee, was arrested in connection with the thefts. Williams implicated his supervisor at CLEAN, the defendant Edward McGhee.

In case No. 198899, McGhee was charged with one count of grand theft (R.C. 2913.02) with prior theft and violence specifications, one count of tampering with records (R.C. 2913.42) with a violence specification, sixteen counts of forgery (R.C. 2913.31) and sixteen counts of uttering (R.C. 2913.31). In case No. 198035, McGhee was charged with one count of theft in office (R.C. 2921.41) with a violence specification. A bench trial ensued on both cases and McGhee was convicted of all counts. In a delayed appeal, McGhee challenges these convictions, raising ten assignments of error.[1]

Project CLEAN, a program funded by the city and implemented through the Cleveland Board of Education, was designed to provide summer employment for youths aged eighteen to twenty-one. As vacant lots coordinator, McGhee's duties included the supervision of all the youths employed to clean various vacant lots scattered throughout the city. Darryl Williams served directly under McGhee as a work-site monitor. Both men worked out of CLEAN's Platt Avenue office. This office served as a conduit through which all employee time sheets and termination papers passed on their way to the board of education payroll department.

According to Williams, McGhee approached him at the beginning of the 1984 summer session with a plan to

[1] See Appendix, *infra* at 63-64, 523 N.E. 2d at 874-875.

divert CLEAN funds to their own use by taking advantage of their control over the employee time sheets. Pursuant to CLEAN regulations, field supervisors submitted employee time sheets every two weeks to the Platt Avenue office. If an employee quit or had three unexcused absences a field supervisor would write "terminated" across the time sheet. Williams testified that he and McGhee devised a plan whereby termination information was withheld from the payroll department and thus the department continued to issue checks to these employees. The "terminated" employees were transferred to the 49th Street work crew under the control of "Thomas Bradley," a fictitious supervisor. Eventually twenty-one ghost employees were added to the 49th Street crew.

It is undisputed that during the summer, McGhee, without the permission of his CLEAN supervisor, changed the rules governing the submission of the time sheets. He instructed the field supervisors to turn the sheets in on a daily basis and to refrain from writing "terminated" on them. According to Williams, McGhee implemented this change to facilitate the scam by allowing them to monitor employee absences and thus "transfer" these employees to the 49th Street crew sooner. He further averred that by instructing the supervisors not to write "terminated" on the time sheets, these same forms could be submitted to the payroll department in exchange for the ghost-employee checks.

At the end of each two-week pay period, Williams was responsible for submitting the time sheets to the payroll department. Williams testified that a few days before the time sheets were due he would turn the sheets of the ghost employees over to McGhee or Sell Jefferson, McGhee's business partner and a former CLEAN employee. According to Williams, the sheets were returned to him with the hours "worked" by each ghost employee filled in. Williams then wrote "Tom Bradley" on the signature line and turned the sheets in to payroll in exchange for new preprinted time sheets for the next pay period.

CLEAN policy required that its employees personally pick up their paychecks, and required that they provide identification before release of the checks. However, one exception to this rule developed. On the pretext that it was inconvenient for the 49th Street workers to retrieve their checks, Williams was permitted to sign for them and purportedly to deliver them to these employees. Williams testified that upon receipt of the checks he would pull those belonging to the ghost employees before delivering checks to the legitimate 49th Street employees.

According to Williams, he gave the remaining checks to either McGhee or Jefferson. Williams averred that a couple of days later McGhee would pay him $50 in cash per check for the first thirteen checks. The balance of the money ostensibly owed to Williams was invested by McGhee in his business, TST Productions, on Williams's behalf. The state introduced a notebook kept by Williams detailing the amounts invested in McGhee's company.

It is undisputed that the ghost-employee checks were forged and deposited in the bank accounts of Jacques Bradley, Andrew Hybian and Eddie Harris. Sandra Ingram and Angenette Cross, tellers at the Shaker Square branch of Broadview Savings and Loan, testified that between July 28 and September 21, 1984, Bradley deposited approximately fifty CLEAN payroll checks in his account. Ingram explained that the checks were endorsed in blank by the payees and by

Jacques Bradley before presentation at the bank. Both tellers further testified that McGhee accompanied Jacques Bradley to the bank on at least two occasions.

The scam was uncovered in the fall of 1984 when Herbert Watson confronted CLEAN officials concerning the denial of his workers' compensation claim. Watson, who broke his leg on August 17 while working for CLEAN, was denied benefits because records indicated that he was still receiving a CLEAN paycheck. A review of Watson's file revealed that, after his injury, he had been transferred to Thomas Bradley's 49th Street crew. Further investigation lead to the discovery that Thomas Bradley did not exist and to the twenty other ghost employees, who included McGhee's brother-in-law and a musician sometimes employed by McGhee at TST Productions.

McGhee, Jefferson and Williams were indicted in April 1985. A search of Jefferson's home uncovered the stubs originally attached to the ghost-employee checks. Police also confiscated Andrew Hybian's bank records which included a number of checks written to Jefferson and one $700 check written to McGhee.

Shortly after McGhee's arrest, he telephoned Christopher Shirley, a friend of Williams. Shirley testified that McGhee said he had a plan "to get out of this" and told Shirley to deliver this message to Williams. The three men subsequently met to discuss McGhee's plan. According to both Williams and Shirley, McGhee detailed a plan whereby Williams would retract his statement implicating McGhee and McGhee would sue the Plain Dealer, the city of Cleveland and the Cleveland Police Department for millions of dollars. In exchange for Williams's release, McGhee would "settle for a couple thousand dollars."

In his defense, McGhee denied any knowledge of the payroll scam. He testified that he had an aversion to paperwork and allowed Williams to oversee the time sheets independently. McGhee admitted to implementing changes in the rules governing the submission of time sheets but claimed the changes were needed because field supervisors were terminating employees inappropriately. Although he did not deny the meeting with Williams and Shirley, he averred that he only wanted to find out why Williams had implicated him.

## I

In his first assignment of error, McGhee posits that his conviction for grand theft is not supported by sufficient evidence.

R.C. 2913.02 defines "grand theft" and provides in pertinent part:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;
"* * *

"(3) By deception;
"* * *

"(B) Whoever violates this section is guilty of theft. * * * If the value of the property or services stolen is five thousand dollars or more * * * or if the offender previously has been convicted of two or more theft offenses, a violation of this section is grand theft, a felony of the third degree. * * *"

McGhee argues that the indictment charged him with one count of grand theft as defined by R.C. 2913.02(A)(1) and that the state only introduced evidence of a theft by deception as set forth in subsection (A)(3). It is his contention that such a

discrepancy entitles him to an acquittal on this count.

Our review of the indictment reveals no such discrepancy. McGhee's indictment provided, in pertinent part:

"The Jurors of the Grand Jury of the State of Ohio, * * * Do find * * * that the above named Defendant(s), * * * unlawfully and knowingly did obtain or exert control over money and checks with the purpose to deprive the owner, City of Cleveland and/or Cleveland Board of Education, of said property or services, without the consent of the owner or person authorized to give consent and/or knowingly and by deception obtained or exerted control over money and checks with the purpose to deprive the owner, City of Cleveland and/or Cleveland Board of Education, of said property or services.

"The value of said property or services being $5,000.00 or more."

The indictment specifically charges theft by deception and thus the defendant's argument is without merit.

Accordingly, this assignment of error is overruled.

## II

In his second, third and fourth assignments of error, McGhee challenges his convictions for forgery and uttering. We will address these alleged errors together.

Initially, McGhee argues that he cannot be convicted of uttering under R.C. 2913.31.

R.C. 2913.31 provides, in pertinent part:

"(A) No person, with purpose to defraud, or knowing that he is facilitating a fraud, shall do any of the following:
"* * *

"(2) Forge any writing so that it purports to be genuine when it is actually spurious * * *;

"(3) Utter, or possess with purpose to utter, any writing which he knows to have been forged.

"(B) Whoever violates this statute is guilty of forgery * * *."

Apparently it is McGhee's position that since any offense under R.C. 2913.31 constitutes "forgery," he cannot be convicted of uttering. We disagree.

"Forgery" and "uttering" are defined in R.C. 2913.01 as:

"(G) 'Forge' means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when such writing in fact is not authenticated thereby.

"(H) 'Utter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display."

These statutory definitions clearly indicate that the acts of forging and uttering are separate and distinct crimes. See *State* v. *Ferrette* (1985), 18 Ohio St. 3d 106, 18 OBR 139, 480 N.E. 2d 399. One who forges may not necessarily utter and one who utters a forged document need not have created the spurious writing. Thus, McGhee's first argument is without merit.

McGhee's second and third assignments of error challenge his conviction for both forgery and uttering on double jeopardy grounds.

The Double Jeopardy Clause of the Fifth Amendment not only protects an accused from multiple prosecutions for the same offense, but it also protects an accused from multiple punishments for the same offense. *North Carolina* v. *Pearce* (1969), 395 U.S. 711; *Brown* v. *Ohio* (1977), 432 U.S. 161. "The Ohio General Assembly has effectuated the principles contained in the Double Jeopardy Clause by means of R.C. 2941.25." *State* v. *Schaub* (1984), 16 Ohio App. 3d 317, 319, 16 OBR 348,

351, 475 N.E. 2d 1313, 1316. See, also, *State* v. *Thomas* (1980), 61 Ohio St. 2d 254, 15 O.O. 3d 262, 400 N.E. 2d 897.

R.C. 2941.25, the allied offense statute, provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

McGhee contends that forging and uttering are allied offenses of similar import within the meaning of R.C. 2941.25 and thus his conviction for both cannot stand.

This court has adopted a two-part test for determining when two crimes are allied offenses. *State* v. *Moralevitz* (1980), 70 Ohio App. 2d 20, 24 O.O. 3d 16, 433 N.E. 2d 1280. First, the elements of each offense must overlap to such a degree that the commission of one offense will result in the commission of the other. Second, the crimes must not have been committed separately or with a separate animus.

Although the express elements of forgery and uttering do not overlap, we have found that in cases where the uttering is merely incidental to the forgery the two crimes are allied offenses of similar import. *State* v. *Hunter* (1983), 12 Ohio App. 3d 75, 12 OBR 273, 466 N.E. 2d 183, paragraph three of the syllabus. For example, when an individual purchases goods on a stolen credit card, the forging and uttering occur simultaneously. See *State*

v. *Dobbins* (June 26, 1980), Cuyahoga App. No. 41364, unreported; *State* v. *Patterson* (July 26, 1979), Cuyahoga App. Nos. 39039 and 39058, unreported.

The record in the instant case clearly demonstrates that the forgeries and utterings were undertaken in separate actions and with separate animuses. The bank tellers' testimony reveals that the checks were forged with the payee's name before any separate attempt was made to deposit them at the bank. As in *Hunter*, "[t]he 'uttering' of these checks was not merely incidental to any forgery which previously occurred, but was wholly separate conduct, albeit performed for the same motive." *Id.* at 78, 12 OBR at 277, 466 N.E. 2d at 187. Thus, the uttering and forgery in the instant case are not crimes of similar import.

Accordingly, McGhee's second, third and fourth assignments of error are not well-taken.

### III

In his fifth assignment of error, McGhee urges that the trial court erred in denying his motion for a new trial.

At the outset we note that McGhee did not file a motion for a new trial. Rather, he moved for leave to file such a motion as the time to make a new trial motion pursuant to Crim. R. 33 had lapsed. The court denied McGhee's request. However, in light of the constitutional issue raised in this alleged error, we will briefly address McGhee's argument.

He posits that he is entitled to a new trial because his Sixth Amendment right to counsel was violated when the police taped a conversation between McGhee and Williams. The record discloses that on the evening of Williams's arrest, McGhee tried to reach Williams by phone at the police station. The police allowed Williams to

return the call and, with Williams's permission, the ensuing conversation was taped. Although the substance of the conversation is not particularly damaging to McGhee, the state introduced the tape at trial. McGhee cites *Moulton* v. *Maine* (1985), 474 U.S. 159, and *Massiah* v. *United States* (1964), 377 U.S. 201, in support of his argument that the taping constituted a violation of his constitutional right to counsel.

In both *Massiah* and *Moulton,* the Supreme Court held that an accused's Sixth Amendment right to counsel was violated when, without the accused's permission, the police taped his conversations with a co-defendant. However, one crucial distinction between those cases and the instant case is overlooked by McGhee. In *Moulton* and *Massiah,* the defendants had been indicted and, thus, their constitutional right to counsel had attached.

It is well-established that an accused's right to counsel accrues "* * * after such time as he has been indicted or otherwise formally charged relative to the crime in question." *State* v. *Stricklen* (1980), 63 Ohio St. 2d 47, 49, 17 O.O. 29, 30, 406 N.E. 2d 1110, 1111. See, also, *State* v. *Sheardon* (1972), 31 Ohio St. 2d 20, 60 O.O. 2d 11, 285 N.E. 2d 335; *Kirby* v. *Illinois* (1972), 406 U.S. 682. In the instant case, the state had not initiated any criminal proceedings against McGhee at the time the conversation was taped. In fact, McGhee was not indicted until approximately three weeks after the taping. Thus, McGhee's right to counsel had not attached and the trial court properly admitted the tape into evidence.

Accordingly, this assignment of error is overruled.

## IV

In his sixth assignment of error, McGhee asserts that the trial court erred in refusing to grant his motion for acquittal pursuant to Crim. R. 29. He posits that the state failed to produce independent evidence corroborating Williams's testimony as required by former R.C. 2923.03(D).

McGhee's convictions primarily stem from the testimony of his accomplice, Darryl Williams. Former R.C. 2923.03 provided, in pertinent part:

"(D) No person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence."

This statute applies whether the defendant is indicted for complicity under R.C. 2923.03 or for the principal crimes as in the instant case. *State* v. *Pearson* (1980), 62 Ohio St. 2d 291, 16 O.O. 3d 332, 405 N.E. 2d 296.

It is well-established that:

"In order for the prosecution to satisfy the corroboration requirement of R.C. 2929.03(D), independent evidence must support an accomplice's testimony, and must tend to connect the accused with the alleged crime or must tend to identify the accused as a guilty actor. (*State* v. *Myers,* 53 Ohio St. 2d 74, approved and followed.)" *Id.* at paragraph two of the syllabus.

McGhee claims that only inadmissible hearsay was introduced to corroborate Williams's testimony. We disagree.

Christopher Shirley testified to numerous statements by the defendant which demonstrate McGhee's involvement in the scam. These statements were properly admitted at trial as admissions by the defendant. See Evid. R. 801(D)(2). According to Shirley, McGhee stated that "he had a plan to get out of this," "the police had him by the ass" and that "if he had worked alone he would not have gotten busted." The bank tellers' testimony that McGhee accompanied Jacques Bradley to the bank when the forged

checks were deposited also corroborates Williams's version of the events.

The circumstantial evidence based upon McGhee's position within CLEAN and his involvement with Sell Jefferson cannot be ignored. The State introduced evidence detailing McGhee's control over the time sheets and the process for "terminating" CLEAN employees. Further, CLEAN employees housed in the Platt Avenue office testified that Jefferson frequently visited McGhee.

In light of these facts, we find sufficient independent evidence to corroborate Williams's testimony. Accordingly, this assignment of error is not well-taken.

## V

In his seventh assignment of error, McGhee posits that the court abused its discretion by excluding defense evidence.

The record reveals that during the presentation of its case in chief, the defense proffered bank records detailing a $3,000 loan received by McGhee to finance TST Productions. The state objected to the records on the grounds that the defense had failed to reveal the documents during discovery and moved for the exclusion of the evidence pursuant to Crim. R. 16(E)(3). Finding that the defense had not complied with the state's discovery requests, the court granted the state's motion and excluded the evidence. McGhee argues that the records were crucial to his defense and, thus, exclusion of the evidence was improper.

Crim. R. 16(E)(3) provides, in pertinent part:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

Absent an abuse of discretion, a reviewing court may not disturb a trial court's imposition of sanctions pursuant to Crim. R. 16(E)(3). *State* v. *Wells* (July 7, 1983), Cuyahoga App. No. 45099, unreported. An abuse of discretion connotes a decision so violative of fact and logic that it evidences an exercise of passion or bias. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 222, 15 OBR 311, 361, 473 N.E. 2d 264, 313. However, we also recognize that in criminal cases, the accused's right to present evidence must be jealously guarded and, thus, the exclusion of evidence should not be used when less harsh remedies are appropriate. *State* v. *Trotman* (Apr. 21, 1983), Cuyahoga App. Nos. 45566 and 45636, unreported.

In the instant case, during trial, the court ordered defense counsel to provide the state with discovery and warned that failure to do so would result in the exclusion of evidence. Disregarding this warning, defense counsel offered the disputed bank records without previously providing the state with an opportunity to review them. We note that although the court did not allow the introduction of these bank records, the court permitted McGhee to testify to the loan. In light of these facts, we find that the court did not abuse its discretion by excluding the records.

Accordingly, the defendant's seventh assignment of error is overruled.

## VI

In his eighth assignment of error, McGhee contends that he was denied effective assistance of counsel because his lawyer did not object to inadmissible hearsay and did not comply with Crim. R. 16(C).

The test in Ohio for determining

effective assistance of counsel is whether the accused, under all the circumstances, had a fair trial and substantial justice was done. *State* v. *Hester* (1976), 45 Ohio St. 2d 71, 79, 74 O.O. 2d 156, 160-161, 341 N.E. 2d 304, 310. In *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397, 2 O.O. 3d 495, 498, 358 N.E. 2d 623, 627, the Supreme Court enunciated a two-part test:

"When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."

The federal test is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* v. *Washington* (1984), 466 U.S. 668, 686. The Supreme Court further stated that "counsel is strongly presumed to have rendered adequate assistance" and that "reasonableness" is the proper measure of attorney performance. *Id.* at 690. In light of these guidelines we will examine the defendant's allegations of ineffective assistance of counsel.

For the most part, the testimony now objected to by the defendant was properly admitted pursuant to Evid. R. 801(D)(2), admissions by a party-opponent.

However, McGhee does cite two instances when his lawyer should have voiced hearsay objections. The first was testimony by Darryl Williams's mother that "Eddie told Darryl that he had given me $20 of his money, and Darryl told him he wants his money."

This statement by McGhee only demonstrates that he owed Darryl some money. We cannot reasonably infer that it constitutes evidence of McGhee's guilt in the matters charged or is in any way material to them.

We note that defense counsel failed to object to portions of Lawrence Duda's testimony concerning the investigation into the thefts. Duda, the supervisor of the Community Youth Services Program, testified to statements made by CLEAN employees who uncovered the fictitious Thomas Bradley and the 49th Street ghost crew. Although those statements were hearsay, the record demonstrates that many of those same employees subsequently testified in court. Thus, the admission of the hearsay statements by Duda was, for the most part, cumulative.

Although defense counsel should have objected to these instances of hearsay, in light of the substantial evidence of McGhee's guilt, we do not find that he was prejudiced by this testimony.

Next, McGhee contends that defense counsel's failure to comply with the state's discovery requests violated his right to effective assistance of counsel.

As we previously noted, the court excluded bank records documenting a loan to TST Productions. McGhee asserts that these records were crucial to prove that he did not need to steal CLEAN money to fund his company.

Although defense counsel should have provided the state with discovery, our analysis does not end there. The court permitted McGhee to testify to receipt of the loan. The defendant also introduced documents proving that TST had received other loans. Furthermore, Norman Bliss testified to funds he had invested in the company. Thus, we do not find that the exclusion of the records so prejudiced the defendant that he was denied a fair trial.

Accordingly, this assignment of error is overruled.

## VII

In his ninth assignment of error, McGhee contends that the trial court erred in admitting hearsay testimony.

McGhee alleges that the record is "replete with hearsay" but only cites two portions of testimony. App. R. 12(A) places the burden of exemplifying errors on the defendant and thus we will not peruse the record in search of those claimed errors.

The following testimony of Audrey Rogers, Darryl Williams's mother, is challenged:

"MR. LOBE: At any time did he [Darryl Williams] mention the name of Eddie McGhee or Sell Jefferson as being those that participated with him.

"MR. THOMPSON: Objection at this point, Judge.

"THE COURT: Go ahead.

"MR. LOBE: O.K. Fine. Did he ever mention that Eddie McGhee and/or Sell Jefferson helped him do this scheme of check cashing from the City of Cleveland Board of Education?

"MRS. ROGERS (Witness): Yes he did."

Mrs. Rogers's statement as to McGhee's involvement in the CLEAN scam clearly constitutes an out-of-court statement offered for the truth of the matter asserted and as such is hearsay. See Evid. R. 801(C). This statement falls within none of the delineated exceptions to the hearsay rule and thus the court should have sustained defense counsel's objection.

Next, the defendant cites Christopher Shirley's testimony concerning McGhee's plan to "get out of this." The statements by McGhee to which Shirley testified reveal admissions by McGhee that he was involved in the CLEAN scam and its attempted coverup. As we have previously noted such statements are admissible under Evid. R. 801(D)(2).

Although Mrs. Rogers's testimony was improper, we find that, in light of the substantial evidence of the defendant's guilt, it was harmless beyond a reasonable doubt. *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 2 O.O. 3d 249, 357 N.E. 2d 1035.

Accordingly, this assignment of error is overruled.

## VIII

In his tenth assignment of error, McGhee contends that theft in office and grand theft are allied offenses of similar import.

In our discussion of the defendant's second, third and fourth assignments of error, we set forth R.C. 2941.25 and the case law interpreting that statute. To briefly summarize, crimes are allied offenses if: (1) their elements correspond to such a degree that the commission of one will necessarily result in the commission of the other, and (2) the crimes were not committed separately or with a separate animus. *State* v. *Moralevitz, supra.*

R.C. 2921.41 defines "theft in office" and provides in pertinent part:

"(A) No public official or party official shall commit any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, when either of the following applies:

"(1) The offender uses his office in aid of committing the offense, or permits or assents to its use in aid of committing the offense;

"(2) The property or service involved is owned by this or any other state or the United States, a county, municipal corporation, or township, or any politicial subdivision, department, or agency of any of them, or is owned by a political party, or is part of a political campaign fund."

"Grand theft" is defined in R.C. 2913.02 which provides in relevant part:

"(A) No person, with purpose to deprive the owner of property or ser-

vices, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat.

"(B) Whoever violates this section is guilty of theft. * * * If the value of the property or services stolen is five thousand dollars or more * * * or if the offender previously has been convicted of two or more theft offenses, a violation of this section is grand theft, a felony of the third degree. * * *"

It is clear from a comparison of the two statutes that the commission of a theft in office automatically results in the commission of a theft. Thus, the two crimes meet the first prong of the *Moralevitz* test. See *State* v. *Christopher* (Oct. 3, 1985), Cuyahoga App. No. 49378, unreported; *State* v. *Olsen* (Dec. 20, 1984), Cuyahoga App. No. 48200, unreported.

We further find that, in the instant case, the two crimes were committed with the same animus. The thefts were all a part of one plan to abscond with CLEAN funds. The same criminal actions by McGhee serve as the basis for both convictions. Therefore, we find that the two crimes are allied offenses within the meaning of R.C. 2941.25 and the defendant's conviction for grand theft must be vacated.

Accordingly, this assignment of error is well-taken.

The judgment is affirmed in part and the cause is remanded for vacation of defendant's grand theft conviction.

*Judgment accordingly.*

MARKUS, C.J., and NAHRA, J., concur.

APPENDIX

Appellant's assignments of error are:

"I

"Appellant's conviction for grand theft is not supported by sufficient evidence denying him due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

"II

"A violation of the prohibition stated in O.R.C. 2913.31(A)(3) is forgery not uttering; therefore, appellant cannot be convicted of uttering.

"III

"A conviction of both forgery and uttering constitutes double jeopardy since uttering is an alternative definition of the offense of forgery.

"IV

"The offenses of forgery and uttering are allied offenses of similar import within the contemplation of O.R.C. 2941.25; therefore, appellant's conviction for uttering must be vacated and a judgment of acquittal entered as to that conviction.

"V

"The trial court erred when it denied appellant's motion for a new trial.

"VI

"The trial court erred when it denied appellant's motion for acquittal on all counts of the indictment.

"VII

"The trial court erred in granting the state's motion to exclude certain of appellant's evidence.

"VIII

"Appellant's right to effective assistance of counsel guaranteed by the

Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution was violated.

"IX

"The trial court erred when it admitted into evidence inadmissible hearsay which had the cumulative effect of prejudicing appellant.

"X

"The offenses of grand theft and theft in office are allied offenses of similar import within the contemplation of O.R.C. 2941.25; therefore, appellant's conviction for grand theft must be vacated and a judgment of acquittal entered as to that conviction."