DECISION.
Defendant-appellant Julious McCray appeals from his conviction for robbery and burglary committed at two separate businesses in 1997 and 1998. In seven assignments of error, McCray claims that the courts in the bifurcated trials erred by admitting identification and "other acts" testimony. He also claims prosecutorial misconduct and ineffective assistance of his court-appointed and retained counsel. Finding no merit in any of these assertions, we affirm the convictions.
The Facts
On August 27, 1997, Cathy Wood, then eight months' pregnant, was working alone at the Manor House Kitchens store. McCray entered the store, discussed the purchase of cabinets for nearly ten minutes, and left. But he quickly returned, claiming that he needed to ask one more question. He then drew a handgun from under his shirt and pointed it at Wood. He took her watch and her wallet, which contained two dollars. Wood gave a detailed description of McCray to the police, identifying him as a stocky African-American male about five feet four inches tall. She described his clothing and added that McCray had a facial mole and spoke with a Caribbean accent. A composite drawing was prepared by the Springdale Police Department.
In October 1997, Wood was shown a photographic array of possible perpetrators. The array did not include a photograph of McCray. Wood did not identify any member of the array as the person who had robbed her.
One day short of a year after the Manor House Kitchens robbery, McCray entered the Star Wigs Beauty Supply store. A store employee found him in the basement, an area marked for employees only. When Springdale police officers arrived, McCray claimed that he had been seeking employment at the store, though he had no résumé, or other job-related papers in his possession. He was, however, carrying a stolen cellular phone. McCray was arrested for criminal trespass and receiving stolen property.
As McCray spoke with a Jamaican accent and met the physical description provided by Wood, police suspected that he had also been involved in several other burglaries. After waiving his right to remain silent, McCray was interviewed for several hours by Springdale detective Jim Grindle. During the interview, McCray boasted that "he had beat[en] [other cases] on technicalities." He described how he would burglarize businesses in which, if caught, he could explain his presence with a valid reason such as that he was there to obtain a job application. Nonetheless, McCray denied attempting to burglarize the Star Wigs store or any other store.
A photo array, which included McCray's photograph, was prepared for Wood, the victim of the Manor House Kitchens robbery, to view. She was again unable to identify the perpetrator. A physical lineup was then conducted at the Hamilton County Justice Center on August 31, 1998. At that time, Wood began to cry and quickly identified McCray.
Police investigations also linked McCray to the theft of purses during an August 24, 1998, burglary at J R Coordinating and during another burglary at the Queen City OB/GYN offices.
Procedural Posture
On September 13, 1998, a Hamilton County grand jury returned a six-count indictment against McCray. In counts one and two, he was charged with aggravated robbery and robbery at the Manor House Kitchens. In count three, he was charged with burglary at the obstetricians' office. Count four charged McCray with the burglary at J R Coordinating. In the fifth and sixth counts of the indictment, McCray was charged with burglary and receiving stolen property in connection with the incident at Star Wigs.
McCray entered pleas of not guilty to all the counts. His experienced counsel filed various pretrial motions, including motions to suppress identification evidence and to sever the charges for trial. The motions were heard before Judge Melba Marsh of the court of common pleas. In January 1999, Judge Marsh denied the motion to suppress Wood's identification of McCray. As the judge knew one of the potential witnesses in the case, she then recused herself.
The case was then assigned to Judge John P. O'Connor. In February 1999, counsel was permitted to withdraw and another experienced criminal defense attorney was appointed to represent McCray. Two months later, that attorney was permitted to withdraw, and a third experienced attorney was appointed. Six days later, McCray hired counsel, his fourth, to represent him.
On April 29, 1999, Judge O'Connor granted McCray's motion to sever certain counts of the indictment and ordered three separate trials: one trial for counts one and two; one trial for count three alone; and a third trial for counts four, five, and six.
On June 28, 1999, a jury trial commenced before Judge O'Connor on counts four, five, and six: the J R Coordinating and Star Wig offenses. The jury returned guilty verdicts on counts five and six, but McCray was acquitted for the burglary at J R Coordinating. The state then dismissed count three: the burglary at the obstetricians' offices. In an August 1999 trial on counts one and two, the Manor House Kitchens robbery, a jury was unable to reach a verdict. The case was then assigned to Visiting Judge William Stapleton. On January 5, 2000, following a jury trial, McCray was found guilty of the Manor House Kitchens robbery and of an accompanying gun specification. On January 6, 2000, he was sentenced on the four convictions to prison terms totaling twenty-two years.
The Lineup Identification
In his first assignment of error, McCray claims that the trial court erred by overruling his motion to suppress his pretrial identification and the ensuing in-court identification by Wood. McCray contends that the physical lineup conducted at the Hamilton County Justice Center on August 31, 1998, five days after his arrest for the Star Wigs incident, was held in violation of his right to counsel and was so flawed that it resulted in an "irreparable misidentification." This assignment is not well taken.
First, the Sixth Amendment right to counsel does not attach to confrontations conducted before a defendant has been indicted or otherwise formally charged with a crime. See Kirby v. Illinois (1972),406 U.S. 682, 688, 92 S.Ct. 1877, 1881; see, also, State v. Sheardon
(1972), 31 Ohio St.3d 20, 285 N.E.2d 335, paragraph one of the syllabus. Moreover, "the right is `offense specific.'" State v. Echols (1998),128 Ohio App.3d 677, 701, 716 N.E.2d 728, 745. Thus, even if a right to counsel had attached for the Star Wig offenses, only the witness to the Manor House Kitchens offenses was involved in the August 31, 1998, lineup. Because no charges were pending for the Manor House Kitchens offenses, McCray had no right to counsel at the lineup.
Before identification testimony may be suppressed, the trial court must find that the procedure employed was so impermissibly suggestive that it gave rise to a very substantial likelihood of misidentification. See Neilv. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375. The factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. See id. at 199-200,93 S.Ct. at 382; see, also, State v. Davie (1997), 80 Ohio St.3d 311, 321,686 N.E.2d 245, 257. Reliability is the linchpin in determining the admissibility of identification testimony, and even if the identification procedure is suggestive, so long as the challenged identification itself is, under the totality of the circumstances, reliable, it is admissible. See Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243.
Here, after reviewing photographs of the lineup participants, we conclude that the lineup was not constituted in an impermissibly suggestive manner. Moreover, Wood's identification of McCray was reliable, as (1) she had had an unobstructed face-to-face encounter with McCray for over ten minutes; (2) her attention was focused on him when he held her at gunpoint to effect the robbery; (3) she was able to give a detailed physical description of McCray to police, including a reference to the mole on his face; and (4) she was certain of her identification when, upon observing the lineup participants, she began to cry and raised four fingers, indicating that the subject in the fourth position, McCray, was the perpetrator. Only the one-year gap between the robbery and the lineup tended to reduce the reliability of the identification. Under the totality of the circumstances, the pretrial identification was not so impermissibly suggestive that it gave rise to a very substantial likelihood of misidentification. The first assignment of error is overruled.
Failure to Rule on Pretrial Motions
In his next assignment of error, McCray claims that the trial court erred by failing to rule on motions to suppress the evidence gained from his arrest without probable cause, and to suppress incriminating statements he had made to police investigators. These motions were filed by his first trial counsel. Judge Marsh, the first trial judge in this case, did rule on the motion regarding the identification testimony.
Pursuant to Crim.R. 12(E), and contrary to the state's reliance on this court's unreported decision in State v. Hablutzel (Nov. 23, 1988), Hamilton App. Nos. C-870789, C-870790, and C-870791, unreported, it is error for a trial court not to rule on motions to suppress prior to trial. See State v. Tolbert (1990), 70 Ohio App.3d 372, 388,591 N.E.2d 325, 336. This error, however, is harmless unless it adversely affects the substantial rights of the defendant. Id.
Here, McCray cannot demonstrate that the failure to rule substantially affected his rights, as (1) each of his three subsequent trial counsel had an opportunity to raise the issues of probable cause and incriminating statements before the subsequent two judges who presided over the severed trials; (2) only one of his subsequent attorneys filed a motion to suppress, which sought only a reconsideration of the ruling on the issue of pretrial identification; (3) in light of the recent decision in Atwater v. Lago Vista (2001), ___ U.S. ___, 121 S.Ct. 1536, McCray may not have been able to demonstrate a constitutional violation for his arrest for a minor criminal offense; and (4) the use at trial of McCray's statements to police investigators about his prior criminal activity was the subject of a pretrial state's motion giving notice of an intent to use the statements, of a motion in limine filed by McCray's fourth trial attorney, and of objection and vigorous argument before the trial court at the time the testimony was offered. The second assignment of error is overruled.
The Admission into Evidence of the Lineup Photographs
McCray next alleges that the trial court erred in permitting photographs of the individuals who appeared in the August 31, 1998, lineup to be introduced into evidence and to be reviewed by the jury. See State's Exhibit 4. McCray claims these photographs provided the jury with indicia of prior criminal activity, as the photograph of McCray in particular contained height lines and a date of June 4, 1998, which was prior to his arrest on August 26, 1998. We disagree.
In State v. Breedlove (1971), 26 Ohio St.2d 178, 271 N.E.2d 238, the Ohio Supreme Court held that evidence of a prior out-of-court identification of the defendant from a photographic array is admissible at trial if the photographs do not provide the trier of facts with the reasonable inference that the defendant has had prior criminal involvement. In this case, the use of height lines in the background of each photograph did not provide the basis for a reasonable inference that McCray had had prior criminal involvement. See State v. Tolbert,70 Ohio App.3d at 387, 591 N.E.2d at 335. But permitting the jury to view photographs of the lineup participants with unredacted dates appearing at the bottom of the photographs could have given rise to the "forbidden inference" of prior criminal activity. In this respect, however, McCray cannot demonstrate prejudice from the admission of the photographs in light of the trial courts' proper admission of other evidence of prior "bad acts." Moreover, the jury was not invited to identify McCray alone as the perpetrator, as each of the photographs in the exhibit displayed an unredacted date. The third assignment of error is overruled.
Evidence of Prior Bad Acts Probative of Identity
In his fourth assignment of error, McCray claims that the two trial courts erred in admitting testimony of prior bad acts in violation of the proscription of Evid.R. 404. Specifically, McCray contends that the trial courts should have excluded the testimony of Springdale detective Grindle that McCray had boasted that "he [had] beat[en] [other cases] on technicalities," and that McCray had described how he would burglarize locations in which, if caught, he could explain his presence with a valid reason. McCray also challenges the admission of statements in which he identified himself as a "crack thief," and the admission, in his burglary trial, that he had previously stolen a laptop computer and a purse.
We note that in the trial on counts one and two, the Manor House Kitchens robbery, presided over by Judge Stapleton, the court limited Grindle's testimony to the "he beats on technicalities" comment. In the earlier trial on counts four, five, and six, the J R Coordinating and Star Wig burglaries, Judge O'Connor had permitted the additional testimony about modus operandi.
The state argues that the evidence was admissible because it was probative of motive, intent, and identity. Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's propensity to engage in misconduct, where it is offered by the state to prove that the defendant committed the crime alleged. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. See Evid.R. 404(B); see, also, R.C. 2945.59. The trial court may admit "other acts" evidence if (1) substantial proof is adduced to show that the person against whom the evidence is offered committed the other acts; (2) one of the matters enumerated in the rule or the statute is a material issue at trial; and (3) the evidence tends to prove the material enumerated matter. See State v. Lowe (1994), 69 Ohio St.3d 527, 530,634 N.E.2d 616, 619.
Here, the identity of the perpetrator of the crimes was in issue. McCray himself placed identity at issue, when, in pretrial motions and at trial, despite his identification by the state's witnesses, he denied his involvement in the Manor House Kitchens robbery, the Queen City OB/GYN offices burglary, and the J R Coordinating burglary.
Having reviewed the record, we conclude that the challenged evidence, for the most part, properly related to and tended to prove McCray's modus operandi and thus his identity as the perpetrator of the charged crimes. The state concedes that evidence of the theft of a laptop computer and a purse ought to have been excluded. Under the circumstances, however, the admission of this "other acts" evidence was not unduly prejudicial. We otherwise hold that the trial courts did not err in admitting the challenged evidence, when it was admissible under Evid.R. 404(B) to prove McCray's identity as the perpetrator of the charged offenses. Accordingly, we overrule the fourth assignment of error.
The Denial of the Motion for Judgment of Acquittal
In his fifth assignment of error, McCray claims that the trial court erred in denying his motion for a judgment of acquittal on counts five and six of the indictment, which charged him with the burglary of Star Wigs Beauty Supply and with receiving stolen property. This claim is without merit, as reasonable minds could have reached different conclusions as to whether each element of the charged crimes had been proven beyond a reasonable doubt, including whether McCray had entered by stealth an area of the wig shop marked for employees only and was found there with a stolen cellular phone. See Crim.R. 29; see, also, State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184. The fifth assignment of error is overruled.
Prosecutorial Misconduct
McCray next asserts that he was denied his constitutional right to a fair trial by a course of prosecutorial misconduct in tampering with photographs of individuals participating in the lineup, and in "permitting" the state's witnesses to give inconsistent testimony about a composite drawing.
The test for whether prosecutorial misconduct mandates reversal is whether remarks or actions were improper, and, if so, whether they prejudicially affected the substantial rights of the accused. See Statev. Bey (1999), 85 Ohio St.3d 487, 493, 709 N.E.2d 484, 493. The central element of prosecutorial-misconduct analysis is "whether the conduct complained of deprived the defendant of a fair trial." State v. Fears
(1999), 86 Ohio St.3d 329, 332, 715 N.E.2d 136, 143, citing State v.Apanovitch (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400.
On this record, we are not persuaded that the statements and actions of the prosecutor prejudicially affected McCray's substantial rights. The record does not reflect any conduct by the prosecutor to induce or to facilitate perjured testimony about the composite drawing, nor, as McCray admits, does it reflect any conduct, beyond courtroom routine, to purposefully tamper with photographic exhibits. Therefore, the sixth assignment of error is overruled.
Ineffective Assistance of Trial Counsel
McCray's seventh assignment of error, in which he claims that the four trial attorneys who represented him at the various stages of the proceedings below were ineffective, is overruled. After reviewing the record, including the pretrial motions the vigorous cross-examination that highlighted inconsistencies in the testimony of the state's witnesses, we hold that there were no acts or omissions by McCray's one retained and three court-appointed attorneys that deprived him of a substantive or procedural right, or that rendered the trials fundamentally unfair. See Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838; see, also, Strickland v. Washington (1984), 466 U.S. 668,694, 104 S.Ct. 2052, 2068.
Therefore, the judgment of the trial court is affirmed.
Gorman, P.J., Hildebrandt and Sundermann, JJ.