THE STATE OF OHIO, APPELLEE, *v.*
MORALEVITZ, APPELLANT.

(No. 40987—Decided August 7, 1980.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Charles K. Webster,* for appellant.

KRENZLER, C. J.   On April 6, 1979, defendant-appellant William J. Moralevitz, hereinafter referred to as appellant, was indicted on one count of kidnapping, as defined by R. C. 2905.01, and three counts of gross sexual imposition, as defined by R. C. 2907.05. At his arraignment on April 11, 1979, appellant pled not guilty.

Appellant was tried before a jury on May 29, 1979. On May 31, 1979, appellant was found guilty of all four counts of the indictment. Appellant was sentenced to terms of imprisonment of five to fifteen years on the count of kidnapping and three to ten years on the counts of gross sexual imposition. All of the sentences were to be served consecutively. Appellant appeals from this judgment.

A summary of the relevant evidence now follows:

The state presented as its key witness the young victim of the offenses, Jill B. After an extensive *voir dire* examination, the court ruled the child competent to testify. The child testified that she was seven years old; that on March 3, 1979, "Bill" took her with him in his car to get some chicken to surprise a friend, Francine; that he first stopped at Burg's store to get wine while Jill stayed in the car; that instead of going to pick up chicken, he drove with Jill to the lake; that he then asked her to get undressed; that he put his finger between her legs; that he put his hand on her chest; and that he put his

tongue in between her legs, by her "private." Also "Bill" told her that if she told anyone, "I'll throw you in the lake." The witness testified that she felt "terrible" and wanted to go home. She tried to get out of the car but the doors were locked. The child did not know how long she was at the lake. "Bill" then drove her from the lake to a corner on East 78th Street. The witness then walked to her home on East 77th Street. She told her mother what had happened and was taken to the hospital. The child identified the appellant in court as "Bill," the individual who had done these things to her.

Francine Garver testified that on March 3, 1979, she was visiting her sister Carol Gross at 1101 East 78th Street; that Jill B. was also there that day; that she and Jill were driven by appellant to buy chicken at Fana's Foods; and that they could not purchase chicken because the store manager told them it was not ready. They then drove back to her sister's home. Francine stated that she later walked to Burg's store where she saw appellant and that he was still there when she left the store. Francine did not recall what time it was when she left the store. She did not see appellant any more that day. She indicated that they were supposed to see each other later in the day to go driving.

Jill's mother testified that her daughter was playing at Carol Gross' house on the day in question with Carol's children; that she saw Jill at 3:30 p.m. when the child came back for her hula hoop; and that she did not see her child again until about 5:20 p.m. when the girl came home with her face flushed and eyes red from crying.

Dr. Richard Niemczura, the physician who examined Jill at the Euclid General Hospital Emergency Room, testified that there was an abrasion on her abdomen; that her vaginal area was somewhat reddened; and that laboratory tests of a specimen taken from the vagina of the child revealed the presence of amylase, an enzyme found in saliva.

A number of other witnesses also testified for the state. When the state concluded its presentation of evidence, appellant moved for a judgment of acquittal on all charges. The court overruled the motion. Appellant then rested. Appellant then moved again that he be acquitted; that the kidnapping and gross sexual imposition counts were allied offenses and that the jury should not be permitted to consider both the kid-

napping and gross sexual imposition counts; and that the court dismiss two of the three gross sexual imposition counts on allied offense grounds. The court overruled these motions.

Appellant assigns three assignments of error for our consideration. They are as follows:

" I. The trial court erred in denying defendant-appellant's motion for directed verdict of acquittal as to the kidnapping count and allowing the jury to consider that count.

" II. The trial court erred in denying defendant-appellant's motion for directed verdict and allowing the jury to consider three counts of gross sexual imposition.

" III. The verdict of the jury was against the manifest weight of the evidence and the trial court erred in not granting defendant-appellant's motion for acquittal."

The first assignment of error raises the question of whether kidnapping under R. C. 2905.01 and gross sexual imposition under R. C. 2907.05(A)(3) are allied offenses under R. C. 2941.25 that would preclude appellant's being convicted of both offenses.

Appellant argues that the trial court erred in permitting the jury to consider the offenses of both kidnapping and gross sexual imposition since these were allied offenses under R. C. 2941.25. In effect, the appellant is also arguing that kidnapping under R. C. 2905.01 and gross sexual imposition under R. C. 2907.05(A)(3) are allied offenses under R. C. 2941.25 and that he cannot be convicted of both of these offenses. Appellant is in error.

The trial court was correct in permitting the jury to consider all of the offenses charged. The allied offense doctrine merely prohibits conviction of allied offenses, not the submission of the offenses to the jury. *State* v. *Osborne* (1976), 49 Ohio St. 2d 135, 144, vacated on other grounds (1978), 438 U. S. 911; *State* v. *Kent* (1980), 68 Ohio App. 2d 151, 154. The trial court was also correct in concluding that the offenses of gross sexual imposition and kidnapping for which appellant was indicted were not allied offenses in the case at bar.

R. C. 2941.25 provides as follows:

" (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

24

" (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In the case of *State* v. *Donald* (1979), 57 Ohio St. 2d 73, the Ohio Supreme Court held as follows in the syllabus:

"Kidnapping, as defined by R. C. 2905.01(A)(4), *is an 'offense of similar import' to rape, as defined by R. C. 2907.02(A) (1),* for purposes of application of R. C. 2941.25(A)." (Emphasis added.)

In reaching this conclusion, the court explained as follows:

"A comparison of R. C. 2907.02(A)(1) and 2905.01(A)(4) clearly indicates similarity between the two offenses. Both offenses, by their very nature, are committed for the same purpose. The kidnapping precedes the actual rape, but can be committed whether the conduct of the offender ultimately results in rape. *The use of force or threat of force is a necessary element of the crime of rape, and the same force or threat may constitute one of the elements of kidnapping,* although the kidnapping may also be committed by deception. *Necessarily, in the crime of rape, the victim must be restrained of her liberty, which can constitute an element of kidnapping.* * * * " (Emphasis added and footnote omitted.) *Id.,* at 74-75.

The common or similar elements of both kidnapping and rape are force and restraint.

The court further explained the significance of the *Donald* case in the case of *State* v. *Logan* (1979), 60 Ohio St. 2d 126, 128-129, as follows:

"In essence, *Donald* established that in order *for two crimes to constitute allied offenses of similar import, there must be a recognized similarity between the elements of the crimes committed. The offenses and their elements must correspond to such a degree that commission of the one offense will result in the commission of the other.*

"In addition to the requirement of similar import of the crimes committed, *the defendant, in order to obtain the protection of R. C. 2941.25(A), must show that the prosecution has relied upon the same conduct to support both offenses charged.* The significance of the holding of *Donald* was that the defen-

dant would be afforded the protection of subsection (A) where the facts were such that the same conduct by the defendant could be construed to constitute two allied offenses of similar import.

"Even though there might be a shield initially provided a defendant under R. C. 2941.25(A) where charged with multiple counts, he still must overcome the hurdle of R. C. 2941.25(B). This section, in essence, provides that notwithstanding the fact that a defendant is charged with two or more offenses of the same or similar kind he may be convicted of all of them if he committed them separately, or if he possessed a separate 'animus' as to each. In so providing, R. C. 2941.25(B) 'carves an exception to division (A) of the same statute * * * .' " (Emphasis added; footnote and citation omitted.)

In the case of *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, the Ohio Supreme Court held that the offenses of possession for sale of a narcotic drug, as defined by R. C. 3719.20(A), and the sale of a narcotic drug, as defined by R. C. 3719.20(B), were allied offenses under the facts of that case. In reaching this conclusion, the court stated as follows:

"A comparison of the instant facts and the elements of R. C. 3719.20(A) and 3719.20(B) demonstrates that, in this cause, these crimes are 'allied offenses of similar import' within the meaning of R. C. 2941.25(A). Implicit in this defendant's violation of R. C. 3719.20(B) was a concomitant violation of R. C. 3719.20(A). *When the state proved all elements necessary to establish defendant's culpability for the illegal sale of a narcotic drug, it simultaneously proved his illegal possession for sale of the same quantity of the same drug.*" (Emphasis added.) *Id.*, at 173.

The above authorities indicate that the threshold question in determining whether two offenses are "offenses of similar import" is whether both offenses have similar, common or corresponding elements such that if one crime were to be proven, the other crime would be simultaneously proven.

Based on these authorities, the determination of an allied offense question is a two-step process. The first step is a statutory analysis whereby the elements of the applicable statutes are reviewed and a determination made as to whether the offenses are allied offenses of similar import. Offenses of

similar import are those which have similar elements, common elements or offenses whose elements correspond to such a degree that the commission of one offense will result in the commission of the other. If the offenses are not allied offenses of similar import, the inquiry is concluded. If the offenses are found to be allied offenses of similar import, then the second step of the inquiry must be undertaken and this constitutes a review of the evidence and a determination made as to whether the offenses were committed separately or with a separate animus as to each. If the offenses were so committed, they cannot be allied offenses and the defendant may be convicted of all of them. If, however, the offenses were committed together with a single animus, they are allied offenses and only one conviction can result.

In the case at bar, appellant was indicted for the offenses of gross sexual imposition and kidnapping. Gross sexual imposition is defined, in relevant part, by R. C. 2907.05 as follows:

" (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons, to have sexual contact *when any of the following apply:*

" (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
" * * *

" (3) *The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person.*

" (B) Whoever violates this section is guilty of gross sexual imposition. Violation of division (A)(1) or (2) of this section is a felony of the fourth degree. Violation of division (A)(3) of this section is a felony of the third degree." (Emphasis added.)

The above statute indicates that "force or threat of force" is *not* a necessary element for the crime of gross sexual imposition when the victim of the sexual contact is less than thirteen years of age. No restraint or removal of the victim is necessary. Even if the victim is a consenting, willing participant in the sexual contact with the defendant, the offense is complete if there is sexual contact and the victim is under thirteen years of age. Proof of conduct involving force is irrele-

vant where a defendant is indicted for mere sexual contact with a victim less than thirteen years of age.

Kidnapping is defined, in relevant part, by R. C. 2905.01 as follows:

" (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, *shall remove another from the place where he is found or restrain him of his liberty,* for any of the following purposes:

" (1) To hold for ransom, or as a shield or hostage;

" (2) To facilitate the commission of any felony or flight thereafter;

" (3) To terrorize, or to inflict serious physical harm on the victim or another;

" (4) *To engage in sexual activity,* as defined in section 2907.01 of the Revised Code, *with the victim against his will;*

" * * *

" (C) Whoever violates this section is guilty of kidnapping, a felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree." [1] (Emphasis added.)

The above statute indicates that kidnapping requires *removal of the victim* or *restraint of the victim's liberty* for any of the illegal purposes outlined in R. C. 2905.01(A), including the purposes of facilitating the commission of a felony or engaging in sexual activity.

Where the offender's purpose is to engage in sexual activity, it must be against the victim's will. Any evidence of force, restraint, or removal of the victim for the purpose of engaging in sexual activity against the victim's will is relevant for the proof of kidnapping but irrelevant as to charges of gross sexual imposition with a victim under 13 years of age. Thus, kidnapping as defined by R. C. 2905.01, and gross sexual imposition, as defined by R. C. 2907.05(A)(3), do not have sufficient similar elements or sufficient common elements or elements corresponding to such a degree that the commission of one offense will result in the commission of the other offense. Because kidnapping, as defined by R. C. 2905.01, and

---

[1] Sexual activity is defined by R. C. 2907.01(C) as "sexual conduct or sexual contact, or both." Sexual contact, of course, is a key element of gross sexual imposition.

gross sexual imposition, as defined by R. C. 2907.05(A)(3), are offenses of dissimilar import for the purpose of the allied offense statute, R. C. 2941.25(B), an individual may be indicted and convicted of both offenses. Appellant's first assignment of error is not well taken.

In his second assignment of error, appellant again raises the allied offense issue with respect to the three counts of gross sexual imposition. In the case at bar, the victim testified to three separate acts of sexual contact including appellant's act of placing his finger between the victim's legs; appellant's act of putting his hand upon the victim's chest; and appellant's act of putting his tongue between the victim's legs. See R. C. 2907.01(B).

These acts did not occur at the same time. They occurred consecutively, according to the victim.[2] Thus, these offenses constituted offenses of "similar kind committed separately" within the terms of R. C. 2941.25(B), just as the commission of anal rape after vaginal rape constituted the commission of separate offenses in *State* v. *Ware* (1977), 53 Ohio App. 2d 210, 211.[3] Therefore, the three counts of gross sexual imposition were not allied offenses. Appellant could validly have been convicted of all three counts. The second assignment of error is not well taken.

In his final assignment of error, appellant argues that the judgment against appellant was against the manifest weight of the evidence. His argument focuses on the limited age and mental capacity of the complaining witness. In fact, the child testified only after a careful and comprehensive *voir dire* examination by the court which demonstrated her competency to testify. The child testified in detail to actions by appellant which fulfilled the necessary elements of one count of kidnapping and three counts of gross sexual imposition. The testimony supplied sufficient evidence to sustain a conviction for these offenses. The trial court was correct in refusing to

[2] The victim was unclear as to the exact order in which appellant committed each of the acts.

[3] The Court of Appeals for Summit County also was confronted in that case with the related issue as to whether the defendant could be convicted, given the facts in that case, of both rape and kidnapping in light of the allied offense doctrine. The court concluded that he could be so convicted. This latter conclusion was appealed to the Ohio Supreme Court which affirmed the decision of the Court of Appeals in the very recent case of *State* v. *Ware* (1980), 63 Ohio St. 2d 84.

grant a motion for a judgment of acquittal. It was the jury's duty to evaluate all of the evidence and to determine whether the complaining witness was to be believed. In the case of *State* v. *Eley* (1978), 56 Ohio St. 2d 169, the Ohio Supreme Court held as follows in the syllabus:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

The record discloses that there was such substantial evidence introduced by the state for the jury's consideration to establish each and every element of the offenses charged. The evidence was legally sufficient to enable a jury of reasonable persons to find appellant guilty beyond a reasonable doubt. The assignment of error is not well taken.

The judgment is affirmed.

*Judgment affirmed.*

PRYATEL and KRUPANSKY, JJ., concur.