DECISION
Gerald W. Brindley, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas. A jury found appellant guilty of three counts of gross sexual imposition, a violation of R.C. 2907.05; and abduction, a violation of R.C. 2905.02. Appellant also appeals the sentence imposed upon him and the trial court's determination that he is a sexual predator.
On February 5, 2001, appellant was indicted by a grand jury for three counts of gross sexual imposition and one count of abduction. According to the indictment, on November 24, 2000, appellant had sexual contact with a person ("victim") who was not his spouse. The indictment further stated that appellant caused the victim to submit by force or threat of force. The indictment also stated that appellant "without privilege to do so, did knowingly, by force or threat, remove [the victim] from the place where she was found, and/or by force or threat, restrain [the victim] of her liberty, under circumstances creating a risk of p hysical harm to [the victim], or placing her in fear."
Appellant was tried before a jury on May 16, 2001. The victim testified that at the time of the alleged incident, she was fifteen years old and lived next door to appellant. She stated that she regularly babysat for appellant and his wife and on the day of the incident, she was babysitting appellant's two children. The victim described the incident as follows:
 [Appellant] came home about 3:30, 3:45 [on November 24, 2000]. And when he first got there, he gave me the money for babysitting, and then when he did, I was finishing up the dishes, and he walks over and he gives me a hug and from behind, and then turns me around and gave me a hug from in the front, tried to stick his hand up my shirt, and I backed up and pushed him down, and that is when he backed me up into the back washroom to the bathroom, and that is when the kids got up and started ___ trying to come in to say hi to him, and he started yelling at them to go back to bed. And I was in the bathroom, and I got scared, and I didn't know what to do. I was trying to get away as much as I could, and he started taking my — he asked me to take my clothes off, and I said, no. And he started taking my clothes off of me, and I was scared that he was going to end up hurting me like he did his kids, and I didn't want that.
The victim testified that appellant touched her breast with his hand, touched her vaginal area with his hand, and sucked on her nipples. Appellant testified during the trial and denied that any sexual contact took place between him and the victim.
On May 17, 2001, a jury found appellant guilty of three counts of gross sexual imposition and one count of abduction. On July 12, 2001, a sexual predator hearing was held. The court found "the prosecution has met its burden by clear and convincing proof * * * that you will re-offend, and the court does find you a sexual predator at this time." The court sentenced appellant to serve twelve months in prison for two of his gross sexual imposition convictions and seventeen months for the third gross sexual imposition conviction. The court also sentenced appellant to serve three years in prison for the abduction conviction. The court ordered appellant to serve the three sexual imposition sentences consecutively and to serve the abduction sentence concurrent with the three gross sexual imposition sentences. Appellant appeals his convictions, sentence, and his sexual predator determination, and presents the following four a ssignments of error:
 [I]. The trial court erred by entering separate judgments of conviction for allied offenses of similar import in violation of R.C. 2941.25(A).
 [II]. Appellant's convictions are against the manifest weight of the evidence.
 [III]. The trial court erred in ordering the sentences to be served consecutively in the absence of probative evidence establishing any of the factors enumerated in R.C. 2929.14(E).
 [IV]. The trial court's decision finding Appellant to be a "sexual predator" as defined by 2950.01(E) is contrary to the weight of the evidence.
Appellant argues in his first assignment of error the trial court erred when it entered separate judgments of convictions for the three counts of gross sexual imposition. Appellant argues that "the three gross sexual imposition offenses with which the appellant was charged were committed for the same purpose." Appellee argues that the acts of touching the victim's breasts over her bra while she was in the kitchen, touching her vaginal area, and sucking her bare breasts were three separate and d istinct offenses.
The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution "protect against a second prosecution for the same offense after acquittal, successive punishments, as well as successive prosecutions, for the same offense." State v. Staten (1999), Franklin App. No. 98AP-263, discretionary appeal not allowed, 86 Ohio St.3d 1402. "Ohio's allied offenses statute, R.C. 2941.25, protects against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions." State v. Moore (1996), 110 Ohio A pp. 3d 649, 653. R.C. 2941.25 states:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
When determining whether two or more offenses are allied offenses of similar import:
 Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." * * * And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. State v. Rance (1999), 85 Ohio St.3d 632, 638-639. (Citation omitted.)
The burden of establishing that two offenses are allied falls upon the defendant. State v. Douse (2001), Cuyahoga App. No. 79318.
Gross sexual imposition is defined in R.C. 2907.05(A), which states in part that "[n]o person shall have sexual contact with another, not the spouse of the offender; [when] * * * (1) The offender purposely compels the other person * * * to submit by force or threat of force." Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
Intimate sexual contacts with a victim that constitute the offense of gross sexual imposition may be treated as separate offenses for the purposes of R.C. 2941.25(B) in at least two instances: (1) where the evidence demonstrates either the passage of time or intervening conduct by the defendant between each incident; and (2) where the evidence demonstrates the defendant's touching of two different areas of the victim's body occurred in an interrupted sequence. State v. Tate (2000), Cuyahoga App. No. 77462. Where a defendant commits multiple, independent acts of forcible sexual activity upon a victim, R.C. 2941.25(B) permits multiple convictions. State v. Stansell (2000), Cuyahoga App. No. 75889. However, where the defendant's several acts constitute one uninterrupted assaultive episode without a separate animus as to each act, R.C.2941.25(A) permits only one conviction. Id.
In the present case, the three actions alleged to have been committed by appellant supporting his three gross sexual imposition convictions are: (1) touching the victim's breasts while he and the victim were in the kitchen; (2) placing his hand over the victim's vagina after having removed her underclothing in the bathroom; and (3) sucking on the victim's nipples after having removed her t-shirt and bra in the bathroom.
According to the victim, the sequence of appellant's sexual assault began in the kitchen when he asked her to take her clothes off. While in the kitchen, appellant began to take her shirt off and "started to touch [her] breasts." The victim stated that she was still wearing her bra at the time appellant touched her breasts in the kitchen. The victim testified that she was able to push his hand down from her breast. She stated that she began backing up toward the bathroom because she was scared he was going to hurt her. The victim further stated that appellant backed her into the bathroom, blocked the door, and again asked her to take her clothes off. The victim testified that after she told him no, "he started taking my clothes off of me." The victim further testified that after appellant removed her t-shirt and bra, appellant "started kissing my belly up to my breast and started sucking on my nipples."
After having reviewed the evidence, we find that appellant's touching of the victim's breasts in the kitchen and sucking on the victim's nipples in the bathroom constitute two separate instances of gross sexual imposition. The evidence demonstrates that there was a sufficient passage of time between each incident and there was intervening conduct by appellant between each incident. Additionally, the evidence demonstrates that appellant touched the victim's breasts in two different ways (by hand and by mouth) during an interrupted sequence.
We note that our finding is similar to another appellate court's decision. In State v. Austin (2000), 138 Ohio App.3d 547, the appellate court upheld a defendant's convictions for gross sexual imposition involving the touching of the victim's breast with his hand and kissing the victim's breast with his mouth. The court stated:
 The record does not indicate that hand and mouth were used in a single, simultaneous instance; rather it is acknowledged that the acts occurred separately but in close proximity of time during the same extended assault on the victim. * * * [I]t is our conclusion that in this case, these acts were of sufficiently separate character both in terms of the animus of the defendant and in terms of the sense of violation undoubtedly experienced by the victim, so as to constitute separate crimes that do not constitute allied offenses of similar import. Id. at 550.
We also find that the acts of appellant placing his hand over the victim's vagina and then sucking on the victim's nipples in the bathroom constituted two separate offenses. The victim testified:
Q. Did he ever touch your vagina?
A. On the front of it, yes, ma'am.
Q. With his hands?
A. Yes, ma'am.
Q. Then was kissing on your breast?
A. Yes.
In State v. Moralevitz (1980), 70 Ohio App.2d 20, an appellate court found that a defendant's "act of placing his finger between the victim's legs; [the defendant's] act of putting his hand upon the victim's chest; and [the defendant's] act of putting his tongue between the victim's legs" constituted three separate gross sexual imposition offenses. Id. at 28. The court found that the acts did not occur at the same time, but instead occurred consecutively and "[t]hus, these offenses constituted offenses of `similar kind committed separately' within the terms of R.C.2941.25(B), just as the commission of anal rape after vaginal rape constituted the commission of separate offenses." Id., quoting R.C.2941.25(B). We also find based upon the same reasoning that appellant touching the victim's breast in the kitchen and then later touching the victim's vaginal area were separate offenses pursuant to R.C. 2941.25.
Accordingly, after having reviewed the record, we find that appellant's actions were separate offenses pursuant to R.C. 2941.25. Therefore, the trial court did not err when it entered separate judgments of conviction for the three counts of gross sexual imposition. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that his convictions are against the manifest weight of the evidence. Appellant contends that appellee's case against him depended entirely on the testimony of the victim and that "several facts put the veracity and accuracy of [her] testimony in doubt."
The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Gray (2000), Franklin App. No. 99AP-666, following State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied (1999), 525 U.S. 1077, 119 S.Ct. 816. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999),527 U.S. 1042, 119 S.Ct. 2407.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. Coley (2001),93 Ohio St.3d 253, 263. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's convictions were against the manifest weight of the evidence. See State v. Smith (1997), 80 Ohio St.3d 89, 114, certiorari denied (1998), 523 U.S. 1125,118 S.Ct. 1811. A review of the facts appellant claims put the "veracity and accuracy" of the victim's testimony in doubt, are in fact, not damaging to her credibility. For example, appellant contends that the victim's testimony differed from a prior statement she gave to a detective. However, a review of the victim's testimony and a portion of the statement the detective played before the jury shows that they are consistent. The victim testified that appellant had not touched her in a private area other than her vaginal area and her breasts. In the tape, the victim stated that appellant "started to" touch her on the buttocks, but did not state that he had touched her on the buttocks. Even if we were to find that the victim's testimony was inconsistent, "a conviction is not against the manifest weight of the evidence merely because the trier of fact may have heard inconsistent testimony." State v. Crawley (2002), Franklin App. No. 01AP-532. Accordingly, appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error the trial court erred when it ordered appellant to serve his gross sexual imposition convictions consecutively. Appellant contends the record does not demonstrate that the victim suffered great or unusual harm. Requiring appellant to serve consecutive terms for his three gross sexual imposition convictions equates to a prison term of forty-one months. The net effect of the court's consecutive term decision will require appellant to serve an additional five months in prison because the court also required appellant's abduction conviction (a thirty-six month term) to be served concurrent with his gross sexual imposition convictions.
R.C. 2929.14(E)(4) states in part:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
In addition to the required findings of R.C. 2929.14(E)(4), when imposing consecutive sentences, the trial court must also give its reasons for selecting consecutive sentences pursuant to R.C. 2929.19(B)(2)(c). State v. Toops (2001), Franklin App. No. 00AP-1451.
In the present case, the court stated that appellant's offenses were serious offenses because they were sex offenses and because of the impact on the victim. Laura Webb, a victim witness assistant with appellee, stated during appellant's sentencing hearing that the victim "has stated to me that this was very difficult for her go through." The presentence investigative report for appellant stated that the victim had moved out of her home and that her mother "stated her daughter was scared to be around the [appellant's] previous home. She is very withdrawn and has changed drastically." The court also found:
 [T]hat the consecutive prison terms are necessary to protect the public and to punish the offender, that each of these individual sentences are not disproportionate to the conduct and the danger the offender poses and the harm is so great or unusual that a single term does not adequately reflect the seriousness of the conduct.
The court further found that there was a lack of remorse on the part of appellant, and that recidivism was likely based upon the presentence investigative report.
We find that the record supports the trial court's decision to impose consecutive sentences and that the trial court made the necessary findings to support its decision. Accordingly, we hold that the trial court did not err when it ordered appellant to serve his gross sexual imposition sentences consecutively. Appellant's third assignment of error is overruled.
Appellant argues in his fourth assignment of error that the trial court's determination that he is a sexual predator pursuant to R.C.2950.01(E) was contrary to the weight of the evidence. Appellant argues that evidence of the commission of a "single, isolated sexual offense, without more, does not establish that the offender is a sexual predator as defined by the Revised Code." We disagree.
A sexual predator is defined as a person who "has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E)(1). After reviewing all testimony and evidence presented at a hearing conducted pursuant to R.C. 2950.09(B)(1), a judge shall determine by clear and convincing evidence whether the offender is a sexual predator. R.C. 2950.09(B)(3). In making the determination of whether the offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09(B)(2)(a) through (j). An appellate court reviewing a finding that an appellant is a sexual predator must examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing standard. State v. Keffe (2000), Franklin App. No. 00AP-118.
 Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. State v. Smith (1999), Franklin App. No. 98AP-1156, following Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122.
Appellant was convicted of three counts of gross sexual imposition, which is a violation of R.C. 2907.05. Gross sexual imposition is considered a "sexually oriented offense" pursuant to R.C. 2950.01(D)(1). Appellant was also convicted for abduction, a violation of R.C. 2905.02. Abduction of a minor is also considered a "sexually oriented offense" pursuant to R.C.2950.01(D)(2)(a).
The record also shows that sufficient evidence exists to demonstrate that appellant is likely to engage in the future in one or more sexually oriented offenses. In addition to the evidence presented during appellant's trial, appellant stated the following during his presentence investigative interview. When asked whether he had a problem with sexual aggression, appellant answered "only when it's with my wife." Appellant admitted that he had been accused of a similar offense when he resided in Florida. The court commented that "it would be unusual that one person would have the same allegations raised against them." Appellant had also been accused of felonious assault against his wife in 1988. When asked to describe the victim, appellant told the interviewer the victim was "5'10; 155-156lbs; Blond Hair; pale blue eyes; heavy hipped; big bone; nice looking young lady." The trial court, commenting on appellant's description of the victim, stated:
 I was troubled as well by your description of your victim, and it wasn't just that she was a nice looking young lady. It was the full description which caused me concern. * * * I think * * * that alone shows that even when you are charged and convicted of this offense, you don't recognize an appropriate conduct.
Appellant was approximately eighteen years older than the victim at the time of the incident. Appellant and the victim both stated that appellant often hugged and/or kissed the victim prior to the incident. The victim stated during appellant's trial that she had asked her boyfriend to tell appellant to stop hugging and kissing her because she thought it was inappropriate. According to appellant, the victim later told him to disregard what her boyfriend had told him and she "gave me a hug and a kiss to prove it. So I figured it was okay to give her a peck on the cheek and a hug again. I know how flighty teenagers can be sometimes." When asked how long the hug and kiss lasted, appellant replied "[a]s long as my kids would tolerate, maybe half a second to a second."[1] The record also shows that the trial court reviewed each of the factors contained in R.C. 2950.09(B)(2)(a) through (j).
After having reviewed the record, we find that sufficient evidence was presented to show that appellant is a sexual predator. Even though appellant has been convicted of only one incident involving sexual assault, the age of the victim, appellant's previous instances of inappropriate conduct with the victim, and appellant's failure to recognize the inappropriateness of his conduct demonstrate that appellant is likely to engage in the future in one or more sexually oriented offenses. Appellant's fourth assignment of error is overruled.
Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is a ffirmed.
Judgment affirmed.
BRYANT, J., concurs.
BOWMAN, J., dissents.
[1] Although presented after the court determined appellant to be a sexual predator, we note that appellant's spouse testified that appellant told her that "he does see that hugging and kissing this girl is a problem. He doesn't need to be doing it * * *."