[Cite as *State v. Biven*, 2019-Ohio-2551.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2018 CA 0082 |
| JAMES BIVEN | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:       Criminal Appeal from the Court of Common
                               Pleas, Case No.  2017 CR 00801


JUDGMENT:                      Affirmed


DATE OF JUDGMENT ENTRY:        June 24, 2019


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

WILLIAM C. HAYES                          STEPHEN E. PALMER
PROSECUTING ATTORNEY                      YAVITCH & PALMER CO., LPA
PAULA M. SAWYERS                          511 South High Street
ASSISTANT PROSECUTOR                      Columbus, Ohio  43215
20 South Second Street
Newark, Ohio  43724

*Wise, J.*

{¶1}   Defendant-Appellant James Biven appeals his conviction and sentence entered in the Licking County Common Pleas Court on two counts of sexual imposition following a jury trial.

{¶2}   Plaintiff-Appellee is the State of Ohio.

<u>STATEMENT OF THE CASE AND FACTS</u>

{¶3}   This case stemmed from an incident on or about September 8, 2017, between Appellant James Biven and his former daughter-in-law, the victim in this case. That evening, Appellant entered the victim's bedroom and engaged in sexual activity with the victim.

{¶4}   As a result, on September 21, 2017, Appellant James Biven was indicted on one count of Rape, in violation of R.C. §2907.02(A)(1)(c), a felony of the first degree, and one count of Sexual Battery, in violation of R.C. §2907.03(A)(3), a felony of the third degree.

{¶5}   On August 21, 2018, the case proceeded to a trial by jury.

{¶6}   At trial, the victim testified that she had known the Appellant since 2002, and that he was her former father-in-law. (T. at 127). She and her family lived in a home in Johnstown that she rented from Appellant. (T. at 128-129). She also worked with Appellant. *Id.* The home she lived in was within walking distance of Appellant's home. (T. at 129). On the night in question, the victim awoke to someone touching her breasts over her clothing. (T. at 145-146). She testified that the person then began rubbing his hand on her vagina under her pants and then began performing oral sex on her. (T. at 146). She stated that she believed at that time that it was her boyfriend, Mike Compton,

because she had been expecting him to come back later that evening. (T. at 146-147, 151, 176, 187). She stated at that time she tapped the person on the shoulder to come up and kiss her and that Appellant froze, and then she saw his bald head as he left her bedroom. (T. at 147). At that point she realized it was Appellant. (T. at 148). She stated that she did not consent to sexual activity with Appellant, and that it made her feel disgusted and gross. (T. at 149, 151, 153, 157).

{¶7} The victim told her brother Bobby what had happened with Appellant. (T. at 199). Bobby testified that he then went and confronted Appellant, pushing him and telling him that he had better stay away from his sister. *Id.* Bobby recalled that when he went back to his sister's house, her boyfriend Mike showed up and that he told him what had happened. (T. at 200). Bobby stated that Mike became angry and then they both went back up to Appellant's house. *Id.* Bobby says he then saw Mike run into Appellant's barn followed by Appellant chasing Mike outside swinging a fire poker at him. *Id.* Bobby stated that he could not clearly recall what happened next other than rocks were thrown and dirt rake was swung around by someone. (T. at 201). He stated that Appellant then stated he was going inside to get a gun, and he and Mike then both ran back to the victim's house. *Id.* Bobby stated that Mike left and then the police arrived. *Id.* Bobby stated that he did not call 9-1-1 but that he believed Mike made the call. *Id.*

{¶8} Deputy Andrew Clary with the Licking County Sheriff's Department testified that he was dispatched to the scene on a rape and/or sex crime call, and that upon arrival he spoke with the victim. (T. at 213, 220-221). Deputy Clary then contacted the Detective Bureau. *Id.* Deputy Clary also testified that he photographed evidence in the victim's bedroom and collected and marked said evidence, including the victim's shorts and

panties. (T. at 214-215). Deputy Clary also took pictures of text messages that the victim had received on her phone. (T. at 215-216, 228). Deputy Clary stated that when Detective Wallace arrived on the scene, he turned the investigation over to her. (T. at 217).

{¶9} Det. Wallace testified that she arrived on the scene at approximately 4:00 a.m. on September 9, 2017, and interviewed the victim. (T. at 274-275). She stated that she also took possession of the evidence collected by Deputy Clary. (T. at 277). Det. Wallace stated that she had the victim accompany her to the Detective Bureau where they attempted to place a controlled phone call and controlled text messages to Appellant. (T. at 279). She recalled that while the victim did not receive a reply while she was at the sheriff's office, she did receive a reply later and that those were forwarded to her. (T. at 279-280).

{¶10} Lieutenant Brock Harmon testified that he was contacted to assist in the investigation of Appellant. (T. at 239). Lt. Harmon testified that he conducted an interview of Appellant on September 10, 2017, at the Licking County Sheriff's Office. (T. at 240).

{¶11} Appellant's interview to police was played for the jury. (T. at 241). In the interview, Appellant admitted that he put his hand on the victim's leg and that he didn't remember how far his finger penetrated her vagina. He admitted it wasn't the victim's fault, and that she probably thought he was somebody else. He then stated that he moved her panties over to the side and performed oral sex on her. Appellant stated that she then said "Mike" and he left. He stated that he was ashamed of what he did.

{¶12} Upon Appellant's request, the trial court instructed the jury on two lesser included offenses of Sexual Imposition as set forth in R.C. §2907.06.

{¶13} On August 22, 2018, the jury returned verdicts of not guilty on the charges of Rape and Sexual Battery but found Appellant guilty on the two lesser included offenses of Sexual Imposition.

{¶14} The trial court sentenced Appellant to sixty (60) days on each count of Sexual Imposition to be served consecutively for an aggregate sentence of 120 days. The trial court also ordered Appellant to register as a Tier I sex offender pursuant to R.C. 2950, et seq.

{¶15} Appellant now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

{¶16} "I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF HIS RIGHT TO PRESENT A COMPLETE DEFENSE BY EXCLUDING KEY EXCULPATORY EVIDENCE ON THE BASIS OF IMPROPER EVIDENTIARY RULINGS, THEREBY VIOLATING APPELLANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

{¶17} "II. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES ON TWO OFFENSES THAT SHOULD HAVE MERGED, THEREBY VIOLATING THE JEOPARDY CLAUSE AND APPELLANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

{¶18} "III. THE CONVICTIONS DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED

STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION, AS THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGES BEYOND A REASONABLE DOUBT AND THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I.**

**{¶19}** In Appellant's first assignment of error, Appellant argues that the trial court violated his Fourteenth Amendment right to Due Process by excluding certain evidence. We disagree.

**{¶20}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *Sage*, 31 Ohio St.3d 173.

**{¶21}** At trial, the court excluded the recorded 9-1-1 call to the Sheriff's Office and a text message from Mike Compton to Nash Ours. Appellant argues that the exclusion of these pieces of evidence deprived him of his opportunity to put forth the defense that Mike Compton had a motive to exaggerate or fabricate a false claim against Appellant.

### 9-1-1 Call

{¶22} The State objected to the introduction of the 9-1-1 call as inadmissible hearsay and the trial court sustained the objection.

{¶23} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). "The hearsay rule ... is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements - the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine - are generally absent for things said out of court." *Williamson v. United States,* 512 U.S. 594, 598, 114 S.Ct. 2431, 2434, 129 L.Ed.2d 476 (1994). Here we find that the 9-1-1 call was made by Mike Compton hours after the incident occurred. Mike Compton did not testify at trial. His statements during the call were therefore out-of-court statements. Such statements were being offered to show that the caller was male and further to let the jury hear the actual language said to the 9-1-1 operator. The purpose of this was to support Appellant's theory of the case, that being that Mike Compton had a motive to make a false claim. We find the statements were therefore being offered for the truth of the matter asserted and were inadmissible hearsay.

**{¶24}** Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen,* 31 Ohio St.3d 111, 119, 509 N.E.2d 383 (1987).

**{¶25}** Evid.R. 803 Hearsay exceptions; availability of declarant immaterial provides,

**{¶26}** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

**(1) Present sense impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.

**(2) Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**(3) Then existing, mental, emotional, or physical condition.**
***

**(4) Statements for purposes of medical diagnosis or treatment.**
***

**{¶27}** 9-1-1 calls are generally admissible as excited utterances or under the present sense impression exception to the hearsay rule. *Navarette v. California,* 572 U.S. 393, 134 S.Ct. 1683, 1689. In this instance, however, we find that no exceptions apply as Mike Compton was not present when the incident occurred, was not a "party opponent", and was not emotional during the telephone call.

**{¶28}** Furthermore, Appellant played the 9-1-1 call to the jury during his opening statements, so the jury knew of the call, that it was made by a man, and also heard the content of the call.

**{¶29}** We therefore find the trial court did not err in sustaining the objection to the admission of the 9-1-1 call.

## Text Message

**{¶30}** The trial court also sustained an objection to the admission of a text message from Mike Compton to Nash Ours on the night of the incident. The text message read as follows:

> Jim's going [sic] jail my dude
> Gross sexual imposition
> Fucking mother fuckers going down yes finally it took me along [sic]
> time bug [sic] he finally fucked up like I knew he would. (T. at 408-410).

**{¶31}** Appellant again argues that the message was not being offered for the truth of the matter asserted, but rather to show Mike Compton's motive to lie, his demeanor, and his animus toward Appellant.

**{¶32}** Again, we find that Mike Compton did not testify at trial and his statement was an out-of-court statement under Evid.R. 801(C). We further find that it was hearsay as it was being offered to show that Compton had a motive to get Appellant in trouble, which again was the truth of the matter for which it was being asserted.

**{¶33}** Further, even if we were to determine that such evidence was admissible, we find beyond a reasonable doubt that it did not affect the outcome of the trial. *State v. Williams*, 55 Ohio App.3d 212, 215, 563 N.E.2d 346 (8th. 1988).

**{¶34}** Based upon the record before us, we conclude that any error in excluding such evidence was harmless beyond a reasonable doubt as the state offered ample evidence of Appellant's guilt.

**{¶35}** Appellant's first assignment of error is overruled.

## II.

**{¶36}** In his second assignment of error, Appellant agues the trial court erred in imposing consecutive sentences.

**{¶37}** Appellant herein was found guilty of the two lesser included offenses on which Appellant had requested the jury be instructed: sexual imposition, which provides:

R.C. § 2907.06 Sexual Imposition

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

(2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.

(3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact.

**{¶38}** "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the

person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. §2907.01(B).

**{¶39}** The trial court sentenced Appellant to sixty (60) days on each count and ordered the sentences be served consecutively. Appellant argues that the two charges should have merged for purposes of sentencing because the charges were allied offenses of similar import.

**{¶40}** R.C. §2941.25, Ohio's allied offense statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶41}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio explained that "the same conduct can be separately punished if that conduct constitutes offenses of *dissimilar* import." *Id.* at ¶ 20, citing R.C. 2941.25(B). Offenses are dissimilar in import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at paragraph two of the syllabus.

**{¶42}** Here, the testimony established that Appellant 1) touched the victim's breasts while she was asleep, 2) rubbed the victim's vaginal area with his hand, and 3) performed oral sex on the victim.

**{¶43}** Initially, we note that this Court, as well as other Ohio Courts of Appeals, have held that sleep qualifies as a mental impairment under the law. As for the element of substantial impairment, this Court has repeatedly held that "sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct." *State v. Jones,* 8th Dist. Cuyahoga No. 98151, 2012-Ohio–5737, ¶ 30, citing *State v. Clark,* 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 21; *State v. Brown*, 5th Dist. Richland No. 2016 CA 0043, 2017-Ohio-1114, ¶ 46.

**{¶44}** Intimate sexual contacts with a victim that constitute the offense of gross sexual imposition may be treated as separate offenses for the purposes of R.C. §2941.25(B) in at least two instances: (1) where the evidence demonstrates either the passage of time or intervening conduct by the defendant between each incident; and (2) where the evidence demonstrates the defendant's touching of two different areas of the victim's body occurred in an interrupted sequence. *State v. Tate* (2000), Cuyahoga App. No. 77462.

**{¶45}** In *State v. Moralevitz* (1980), 70 Ohio App.2d 20, 433 N.E.2d 1280, an appellate court found that a defendant's "act of placing his finger between the victim's legs; [the defendant's] act of putting his hand upon the victim's chest; and [the defendant's] act of putting his tongue between the victim's legs" constituted three separate gross sexual imposition offenses. *Id.* at 28, 433 N.E.2d 1280. The court found that the acts did not occur at the same time, but instead occurred consecutively and

"[t]hus, these offenses constituted offenses of 'similar kind committed separately' within the terms of R.C. 2941.25(B).

{¶46} Similarly, in *State v. Washington,* 10th Dist. No. 01AP–727, 2002–Ohio–2086, ¶11, the victim testified that the defendant touched her vagina and anus with his penis and fingers several times. The court found that the instances of contact, although occurring in close proximity, constituted multiple offenses rather than a single, simultaneous act. *Id. See also State v. Brindley*, 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, (defendant's touching of victim's breasts, sucking on victim's nipples, and touching of victim's vagina constituted separate instances of gross sexual imposition, such that defendant could be convicted of and punished for each).

{¶47} Under the specific facts in this particular case, we find that Appellant's conduct in touching the victim's breasts while she was under the impairment of sleep was a separate punishable offense from his subsequent actions of touching her vagina with his hand and then performing oral sex on her which occurred after she was awake.

{¶48} Therefore, the trial court did not err by not merging Appellant's two convictions for sexual imposition based on those acts.

{¶49} Appellant's second assignment of error is overruled.

**III.**

{¶50} In his third assignment of error, Appellant argues that his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶51} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility

of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶52} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶53} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins, supra*, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶54} Appellant herein was convicted of Sexual Imposition, in violation of R.C. §2907.06(A)(1)(2) or (3), a third degree misdemeanor, as set forth above.

{¶55}   At trial, the jury was presented with testimony and evidence from the victim who testified the she awoke to Appellant touching her breasts, that he then rubbed her vaginal area and then performed oral sex on her. (T. at 145-146). She testified that she thought it was her boyfriend in her bed with her, and that she did not consent to sexual contact with Appellant, and that afterwards she felt disgusted by the incident. (T. at 146-157).

{¶56} The jury also heard Appellant's taped interview with the police. In the interview, the jury heard Appellant admit that he put his hand on the victim's leg and that he may have digitally penetrated her vagina. He also admitted that he performed oral sex on the victim and that she probably thought he was someone else. He stated that he was ashamed of his actions.

{¶57} Appellant attempts to discredit the victim with references to inconsistencies in her statements and testimony, but any contradictions are for the fact finder, in this case the jury, to resolve within its determination of the credibility of the witnesses.

{¶58} We find that after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt". Further, we cannot find that this is a case in which "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered," *Thompkins, supra,* so we must hold that the conviction is not against the manifest weight of the evidence or the sufficiency of the evidence.

**{¶59}** Appellant's third assignment of error is overruled.

**{¶60}** For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/d 0611